IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 13 CV 4307 |
| v. | ) ) | Judge Andrea Wood |
| DOLGENCORP, LLC d/b/a DOLLAR GENERAL, | ) ) ) ) | Magistrate Judge Finnegan |
| Defendant. | ) | |

**JOINT DISCOVERY PLAN FOR FACT DISCOVERY**

Plaintiff Equal Employment Opportunity Commission ("EEOC") and Defendant Dolgencorp, LLC ("Dollar General"), pursuant to this Court's order, hereby submit the following Joint Discovery Plan:

**I.    ANTICIPATED DISCOVERY PLAN**:

The Parties present this discovery plan related to three main areas of discovery currently in dispute: 1) Disparate Impact (*see* II., *infra*); 2) Business Necessity (*see* III., *infra*); and 3) Less Discriminative Alternatives to Criminal Background Checks (*see* IV., *infra*). The Parties acknowledge that additional discovery not identified herein may ultimately be necessary. The Parties also agree that this discovery plan is not intended to, and therefore does not, include the information that they may seek from their own witnesses (including their own experts), nor is this discovery plan an attempt to satisfy the Parties' disclosure obligations under the Federal Rules of Civil Procedure (including related to experts). The Parties may also serve/seek additional discovery within the discovery period related to these topics.[1] Moreover, for ease of

---

[1] Dollar General asserts that the EEOC has already served more than 25 interrogatories, and Dollar General has

1

reference for the Court, the Parties have provided, attached hereto as Exhibit A, a summary of discovery that has been sought to date.

**II.     Disparate Impact**:

    **A.     The Legal Standard:**

        **1.     The EEOC's Statement:** EEOC alleges that Dollar General's facially neutrally criminal background check policy has a disparate impact on African-American candidates. Dollar General uses a single background screen for all positions nationwide. EEOC alleges that this is the "particular employment practice" that causes a disparate impact. *See* 42 U.S.C. sec. 2000e-2(k)(1)(A)(i).

        **2.     Dollar General's Statement:** The EEOC must show, using a "reliable and accurate statistical analysis performed by a qualified expert," that Dollar General's facially neutral practice "'has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.'" *EEOC v. Freeman*, 961 F. Supp. 2d 783, 786 (D. Ma. 2013) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)). Here, the EEOC alleges that Dollar General's facially neutrally criminal background check policy has a disparate impact on African-American candidates. Dollar General further asserts that this statistical analysis must be done on a factor-by-factor basis, taking into account factors such as the specifics of each position, the type of crime, the available talent pool, and geographical considerations. *See Bennet v. Roberts*, 2001 U.S. Dist. LEXIS 3363, at *18-19, 22-23 (N.D. Ill. Mar. 16, 2001) (granting defendant's motion for summary judgment, in part, because plaintiff's statistical data was flawed, as she improperly "attempt[ed] to compare the number of African-Americans and other minorities hired by one district to [the district she applied to teach at]"); *Stender v. Lucky Stores, Inc.*, 1991 U.S. Dist. LEXIS 16316, at *11 (N.D. Cal. Apr. 4, 1991) (describing the results of the different statistical analyses and standard deviations for each store position in a disparate impact case, including "Store Manager, Assistant Store Manager, Third Person, Produce Manager, and Deli/Bakery Department Head"); *see generally Wards v. Cove Packing Co. v. Antonio*, 490 U.S. 642, 650 (1989) (explaining that "[r]acial imbalance in one segment of an employer's work force does not, without more, establish a prima facie case of disparate impact with respect to the selection of

---

lodged objections to the same. Dollar General maintains that discovery in this matter is governed by the limitations set forth in the Federal Rules of Civil Procedure. EEOC asserts that is has only served 23 interrogatories so far and Dollar General has refused to answer many of them. *See* descriptions of pending discovery disputes generally, *infra*. Furthermore, EEOC believes that, going forward, additional interrogatories may be necessary and appropriate to facilitate efficient discovery

workers for the employer's other positions, even where workers for the different positions may have somewhat fungible skills").

B. **Disparate Impact Discovery Sought by the EEOC**: EEOC seeks discovery on: (1) how the criminal background checks are conducted; (2) how the complete hiring process works at Dollar General; and (3) how the background checks figure into the entire hiring process. Additionally, to conduct the necessary statistical analysis, EEOC seeks complete data regarding the conditional hires and explanations of the data, including how the data is collected and maintained.

1. **Written Discovery By the EEOC To Dollar General:**

    **(1)** Database of conditional hiring data (Rog #2, #9, Doc Request #4)

    **(2)** How the background checks are conducted (Rog #4)

    **(3)** To whom the background check applies (Rog #13, 14)

    **(4)** What data is available and in what formats (Rog #9 & 15, Doc Request #1, #2)

2. **Written Discovery By the EEOC To Third Parties**:

    **(1)** Subpoena to GIS for data on conditional hires

    **(2)** Subpoena to Equifax for data on conditional hires

3. **Depositions Sought By the EEOC From Dollar General**:

    **(1)** Rule 30(b)(6) on database issues

    **(2)** Fourteen (14) Witnesses identified by Dollar General in its 26(a)(1) disclosures and in response to Interrogatory #1 (Rog. #1) as having knowledge of the criminal background check process. Dollar General has failed to provide a sufficient description of the knowledge possessed by each of these individuals. EEOC must therefore assume that these individuals have knowledge weighing on both the disparate impact and business necessity

    **(3)** Store Managers – how does Dollar General's hiring policy work at the store level?

4. **Depositions Sought By the EEOC from Third Party**:

    **(1)** Rule 30(b)(6) witness on database issues of GIS

    **(2)** Rule 30(b)(6) witness on database issues of Equifax

3

C. **Dollar General's Position on the EEOC's Proposed Disparate Impact Discovery**:

1. **Written Discovery Sought By the EEOC (from Dollar General and Third Parties)**: Dollar General claims it has reasonably responded to the EEOC's discovery requests. On the issues raised in the EEOC's first Motion to Compel, the EEOC seeks the production of personal identifying information ("PII") of individuals who are not parties to this lawsuit, and information that has no effect on whether the EEOC can meet its burden of demonstrating that the Dollar General's criminal background check policy has a disparate impact on African Americans. The Parties' position on the scope of permissible discovery, including related to PII, is subject to the fully-briefed Motion to Compel. *See* Dkt. 61 (EEOC's Motion to Compel); Dkt. 67 (Defendant's Response to the EEOC's Motion to Compel); Dkt. 69 (the EEOC's Reply).

2. **Depositions Sought by the EEOC from Corporate Representatives of Dollar General**: With respect to the requested Rule 30(b)(6) witnesses regarding Dollar General's databases and certain of the topics identified pursuant to Rule 26(a)(1), Dollar General agrees that its corporate representatives have discoverable information. But, without yet seeing deposition notices pursuant to Rule 26(a)(1), Dollar General cannot determine if the Parties have a similar opinion on the appropriate scope of discovery on these matters. Accordingly, Dollar General reserves its right to object to any future Rule 26 deposition notices. Moreover, Dollar General does not believe that the depositions of fourteen (14) persons identified in Dollar General's Rule 26 disclosures are necessary. Dollar General believes it has provided sufficient information to identify the knowledge that these persons possess, but has agreed to further supplement as necessary and to confer with the EEOC related to the personal knowledge of its witnesses.

3. **Depositions Sought by the EEOC from Dollar General's Store Managers**: As to the Store Manager depositions, Dollar General has filed a Motion for Entry of a Protective Order (*see* Dkt. 86)) to limit the scope of the depositions or to convert the same to Rule 30(b)(6) depositions as Dollar General's individual Store Managers are not proper witnesses to speak to Dollar General's complete hiring policies and processes as a corporate representative. Dollar General's opposition to these depositions is fully briefed to the Court. *See* Dkt. 86, Defendant's Motion for Entry of Protective Order.

4

    **4.** **Depositions Sought by the EEOC from Third Party GIS**: The EEOC served a Rule 30(b)(6) deposition notice on Dollar General's Background Check Vendor, GIS, which has agreed to provide a witness for some topics. The Parties will confer to set a mutually agreeable date. Dollar General will consider appropriate steps should the notices address irrelevant issues.

**D.** **Disparate Impact Discovery Sought by Dollar General**: Dollar General seeks discovery on (1) the EEOC's findings and analyses of disparate impact regarding Dollar General's background check policy; (2) how the EEOC conducted the analyses and what assumptions were made in conducting its analyses; and (3) what information the EEOC used in its analyses to make the decision to bring this suit. Dollar General will further seek discovery from the EEOC's experts, if any, on these topics.

    **1.** **Written Discovery By Dollar General to the EEOC**:

        **(1)** Information regarding the EEOC's analyses and findings of disparate impact. (Rog # 2, 11, 17, 19, 20; Doc. Request #3).

    **2.** **Depositions Sought by Dollar General From the EEOC**:

        **(1)** Any EEOC experts and/or investigators on the issue outlined above and on how these witnesses came to a conclusion that Dollar General's criminal background check policy has a disparate impact.

    **3.** **Depositions Sought By Dollar General from Third Parties**

        **(1)** None at this time.

**E.** **EEOC's Position as to Dollar General's Proposed Disparate Impact Discovery**: EEOC objects to this discovery on relevance and privilege grounds. This dispute is the subject of a motion to compel currently pending before Judge Wood (Dkt. # 88)

**F.** **Status of Disparate Impact Related Discovery Disputes**:

**1.** **Defendant's Motion to Compel**: Dollar General's Motion to Compel (Dkt. 63) relates to its first set of interrogatories and its first set of requests for production of documents to the EEOC. Dollar General seeks information related to the EEOC's disparate impact analyses, individuals who have knowledge of the allegations raised in the EEOC's Complaint, and the portions of Dollar General's criminal background check policy that the EEOC deems unlawful. (Rog # 2, 11, 17, 19, 20; Doc. Request #3). Dollar General argues that, to date (and after ten years of investigation and litigation), the

5

EEOC still has not provided Dollar General with its analysis of the specific way in which the criminal background policy creates a disparate impact on African Americans and the EEOC still refuses to identify the crimes or employment positions that have resulted in a disparate impact in connection with employment of African-Americans. In Response, the EEOC states that the only analysis it has withheld is pre-litigation analysis conducted during pre-litigation decision deliberations and that the EEOC will produce to Dollar General all analysis that it will rely upon in this case. The EEOC argues that the pre-litigation information that Dollar General seeks is protected from disclosure by government deliberative process and attorney work product doctrine and the EEOC disputes that this information is relevant to the case as EEOC does not intend to rely on its previous analysis and will provide analysis through its experts. This motion is fully briefed and is before the Court. *See* Dkt. 63, Defendant's Motion to Compel; Dkt. 66 (EEOC's Response to Defendant's Motion to Compel); Dkt. 70 (Defendant's Reply in Support of its Motion to Compel).

2.    **The EEOC's Motion to Compel**: The EEOC's Motion to Compel (Dkt. 61) relates to its first interrogatories and its first request for production of documents. The EEOC's motion, in part, pertains to what personal identifying information ("PII") will be available to the EEOC as part of the electronic database produced. The EEOC seeks the PII to enable it to link information across the multiple databases from Dollar General and its vendors. Without a decision on this motion, the EEOC claims it cannot move forward with a statistical analysis that it seeks to use to meet its burden of showing a disparate impact. (Rog # 2, 4, 9, 13-15; Doc. Request # 1, 2, 4). Defendant disagrees and asserts that the EEOC has sufficient data to conduct any statistical analysis it may need to conduct. This motion is fully briefed and is before the Court. *See* Dkt. 61 (EEOC's Motion to Compel); Dkt. 67 (Defendant's Opposition to the EEOC's Motion to Compel); and Dkt. 69 (EEOC's Reply in Support of its Motion to Compel).

3.    **Defendant's Motion for Entry of Protective Order; and the EEOC's Motion to Compel**: Dollar General filed a Motion for Entry of Protective Order (Dkt. 86) as to the Store Managers depositions sought by the EEOC. Dollar General would like to limit the scope of topics to those that are relevant to this case, and those that are within these Store Managers' personal knowledge. EEOC has stated that these representative depositions seek relevant information regarding the hiring process and steps taken to protect against theft and workplace violence relevant to Dollar General's stated business necessity defense. Additionally, the EEOC has filed a Motion to Compel (*see* Dkt. 88) these same Store Manager depositions. These motions are fully briefed and are before the

6

Court. *See* Dkt. 86 (Defendant's Motion for Entry of Protective Order); Dkt. 91 (the EEOC's Response to Defendant's Motion for Entry of Protective Order); Dkt. 88 (EEOC's Motion to Compel); Dkt. 92, (Defendant's Response to the EEOC's Motion to Compel).

G. **Other Disparate Impact Discovery**:

1. EEOC has served subpoenas on GIS and Equifax. The third party vendors are waiting for a ruling from the District Court before completing data production.

2. EEOC served a 30(b)(6) deposition notice on GIS, which has agreed to provide a witness for some topics. Parties will confer to set a date.

3. No depositions have been taken.

III. **Business Necessity**:

A. **The Legal Standard:**

1. **The EEOC's Statement:** If the EEOC is able to satisfy its burden, then Dollar General must demonstrate that its criminal background check policy "is 'job related' and 'consistent with business necessity.'" *Id.* (quoting 42 U.S.C. § 2000e-2(k)(1)(A)).

2. **Dollar General's Statement:** As mentioned above, the EEOC must demonstrate through its statistical analysis that Dollar General's use of its criminal background check policy has a disparate impact on African American candidates to whom a conditional offer of employment was extended. If the EEOC is able to satisfy its burden, then Dollar General must demonstrate that its criminal background check policy "is 'job related' and 'consistent with business necessity.'" *Id.* (quoting 42 U.S.C. § 2000e-2(k)(1)(A)). However, to date, because the EEOC has not articulated how Defendant's policies disparately impact African Americans – by job classification, types of crimes, geographic locations, etc. – Defendant cannot presently know what evidence is required to demonstrate the job relatedness and business necessity as it relates to any such alleged instances of disparate impact.

B. **Business Necessity Discovery Sought by the EEOC**: The EEOC seeks discovery on: (1) how the background check policy was developed and what specific concerns it was designed to address; (2) Dollar General's claimed business necessity for its background check process; (3) data, studies or other information that might support that belief; (4) a full description of all the jobs at issue; and (5) what other checks and/or measures are in place that could address Dollar General's articulated needs such that the background check may be unnecessary.

7

1. **Written Discovery By the EEOC to Dollar General**:

    **(1)** Policy Creation (Rog #10, 11)

    **(2)** Dollar General's business necessity (Rog # 5, 6, 7, 19, 22)

    **(a)** The Parties note for the Court that they are still in the process of working through search terms for electronic discovery on this topic. Sample documents have been produced related to preliminary searches.

    **(3)** Job Descriptions (Rog #13)

    **(4)** Understanding of other checks & security measures: Desired Behavior Assessment (Rog #20-21, 22)

    **(5)** Application of policy to specific applicants (Rog #16)

2. **Written Discovery By the EEOC to Third Parties**:

    **(1)** Policy creation – this is part of the subpoena already served on Dollar General's Background Check Vendor, GIS

3. **Depositions Sought By the EEOC from Dollar General**:

    **(1)** Rule 30(b)(6) on business necessity including the reasoning behind the policy, job position descriptions, and other security measures undertaken

    **(2)** Employees involved in the creation of the policy (the 5 persons identified in response to Rog #10 overlaps with witnesses identified in 26(a)(1) disclosures and listed for deposition above)

    **(3)** Loss prevention employees at Dollar General (assumption of overlap with the 14 persons identified on disclosures, may identify more employees through discovery)

    **(4)** Employees in positions subject to criminal background policy to test corporate job descriptions

    **(5)** Store Managers regarding actual store activity and operations

4. **Depositions Sought By the EEOC from Third Parties**:

    **(1)** Rule 30(b)(6) deposition of GIS: GIS has indicated it would provide a witness on this topic.

C. **Dollar General's Position as to the EEOC's Proposed Business Necessity Discovery**: Dollar General objects to much of the discovery the EEOC seeks because other "checks and security measures" that Dollar General has are irrelevant because they do not make it any more or less likely that Dollar General's reasons for conducting the background checks are justified by business necessity. The scope of the litigation is limited by the EEOC's prior investigation and conciliation efforts, and thus, the EEOC cannot use the discovery tools to expand the scope of this case to include other steps in Dollar General's hiring process (such as the Desired Business Assessment ("DBA")). Moreover, for those pre-offer screening tools that precede the conditional offer of employment, they cannot be relevant to this case as any person for whom a criminal background check is performed would have satisfied all other pre-offer screening tools as criminal background checks are only conducted after a conditional offer of employment has been given. Dollar General also objects to the discovery the EEOC seeks because much of it is cumulative and unnecessary, as the EEOC seemingly wants to elicit the same information from a variety of sources, in addition to sources that may not even have knowledge the of the information the EEOC seeks. Moreover, to the extent the EEOC seeks to take the deposition of random fact witnesses, Dollar General contends that the depositions be limited in scope to the issues relevant to this case and to the information within such individual's personal knowledge. Lastly, Defendant notes that it has produced approximately 170 pages of job descriptions and over 120,000 pages of sample documents related to search terms initially provided by the EEOC.

D. **Business Necessity Discovery Sought by Dollar General**: Dollar General requires discovery on (1) whether, and to what extent, the EEOC uses background checks in its hiring process; (2) what alternative, less-discriminatory selection procedures the EEOC has used or considered to satisfy the goals supporting its business necessity for using the criminal background check; (3) what alternative, less-discriminatory selection procedures the EEOC believes Dollar General could utilize and still satisfy the considerations and goals supporting its business necessity for using the criminal background check; and (4) what policies and procedures the EEOC believes are reasonable and/or consistent with their guidelines/expectations. Moreover, although not outlined here, Dollar General anticipates the Parties will conduct expert discovery related to the business necessity of criminal background checks.

1. **Written Discovery By Dollar General to the EEOC:**
    **(1)** What policies and practices regarding background checks and criminal history records the EEOC uses when making employment decisions. (Rog #12-14; Doc. Request #36-39).

9

      **(2)** What background check policies are lawful. (Rog #16; Doc. Requests #41-43).

  **2.** **Depositions Sought By Dollar General**

    **(1)** **Depositions Sought From the EEOC**

      (a) Any decision maker at the EEOC who is charged to make employment decisions related to adverse results found through criminal background check policies implemented by the EEOC

      (b) An EEOC Representative that who maintains or implements a criminal background check policy related to hiring decisions made by the EEOC

      (c) An EEOC Representative who can discuss criminal background check policies and processes that they deem to not violate Title VII and/or their guidelines

      (d) An EEOC Representative who can discuss all criminal background check policies challenged by the EEOC, and the outcome of those investigations, including any court or jury determination as to whether such policies were deemed to violate Title VII.

      (e) Any expert the EEOC may disclose or present

    **(2)** **Depositions Sought from Third Parties**

      (a) No deposition notices pending currently.

**E.** **EEOC's Position as to Dollar General's Proposed Business Necessity Discovery**: EEOC objects to this discovery based upon the limitations on disclosure of information obtained in investigations of other employers under Title VII and on relevance grounds. This dispute is the subject of a motion to compel currently pending before Judge Wood (Dkt. # 88)

**F.** **Status of Business Necessity Related Discovery Disputes**: Before Judge Wood are the Parties' cross-motions to compel and Dollar General's Motion for Entry of a Protective Order related to business necessity issues. *See* Dkts. 61, 63, 86, 88, 91, 92.

  **1.** **Defendant's Motion to Compel**: Dollar General seeks information related to the EEOC's own policies and practices and its use of criminal background checks to make employment decisions, and background checks the EEOC deems lawful. (Rog # 12-14; Doc. Request # 36-39, 41-43). Dollar General argues that the EEOC has refused to provide any information related

10

to its own procedures policies and procedures or those that they EEOC deems to be consistent with the EEOC's guidelines, which Dollar General contends is necessary to analyze the business necessity issue (should the EEOC meet its burden of demonstrating Dollar General's criminal background check policy has a disparate impact). In Response, the EEOC maintains that the EEOC's procedures are irrelevant to whether Dollar General's hiring procedures had a disparate impact or are justified by business necessity. This motion is fully briefed and is before the Court. *See* Dkt. 63, Defendant's Motion to Compel; Dkt. 66 (EEOC's Response to Defendant's Motion to Compel): Dkt. 70, (Defendant's Reply in Support of its Motion to Compel).

2. **The EEOC's Second Motion To Compel**: The EEOC's second motion to compel (Dkt. 88) relates interrogatories about Dollar General's hiring process (*see* Interrogatory Nos. 20-21). The EEOC also seeks a court order requiring Dollar General to produce two of its Store Managers for a deposition related to the Business Necessity topic and also seeks discovery on its other security measures. These discovery disputes are fully briefed and are before the Court. *See* Dkt. 88 (EEOC's Second Motion to Compel); Dkt. 92 (Defendant's Response to the EEOC's Motion to Compel); Dkt. 86 (Defendant's Motion for Entry of Protective Order); Dkt. 91 (the EEOC's Response to Defendant's Motion for Entry of Protective Order).

3. **Other Disputes**: The EEOC also has raised that Dollar General has not provided information related to any negligent hiring complaints or suits (Rog #5) or workplace theft (Rog #6). However, these Interrogatories are not currently the subject of any pending motion to compel. The Parties agree to meet and confer further on these issues.

4. **Electronic Discovery**: Dollar General and EEOC are still in the process of working through other electronic discovery issues regarding search terms.

I. **Less Discriminatory Alternative:**
  A. **The Legal Standard:**
    1. **The EEOC's Statement:** If Dollar General establishes that it had a business necessity for using the criminal background check at issue here, the EEOC can still prevail by demonstrating that (1) there was a less discriminatory alternative procedure that Dollar General could have adopted in place of the criminal background check policy that it utilizes, and (2) this alternative procedure would have achieved Dollar General's goals without the discriminatory effect.
    2. **Dollar General's Statement:** If Dollar General establishes that it had a business necessity for using the criminal background check at issue here, the

11

   EEOC can still prevail by demonstrating that (1) there was a less discriminatory alternative procedure that Dollar General could have adopted in place of the criminal background check policy that it utilizes, and (2) this alternative procedure would have achieved Dollar General's goals without the discriminatory effect. *See, e.g.*, *Dunlap v. TVA*, 519 F.3d 626, 629 (6th Cir. 2008) ("If [the plaintiff] succeeds, the employer must show that the protocol in question has 'a manifest relationship to the employment'—the so-called 'business necessity justification. The plaintiff must then show that other tests or selection protocols would serve the employer's interest without creating the undesirable discriminatory effect. (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971); citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975))); *Allen v. City of Chicago*, 351 F.3d 306, 311-12 (7th Cir. 2003) (same).

 B. **<u>Less Discriminatory Alternative Discovery Sought by the EEOC</u>**: (1) whether Dollar General considered any less discriminatory alternatives; and/or (2) whether other measures already in place at Dollar General satisfied Dollar General's alleged business necessity.

   1. **Written Discovery By the EEOC to Dollar General:**

    **(1)** Other measures Dollar General considered (Rog. #8).

    **(2)** Other methods currently used to achieve Dollar General's stated basis for its background screen (Understanding of other checks & security measures: Desired Behavior Assessment (Rog #20-21, 22)

   2. **Depositions Sought By the EEOC From Dollar General:**

    **(1)** Fact witnesses involved in policy creation.

    **(2)** Rule 30(b)(6) on policy creation will include topics of alternatives considered and alternatives already in place.

 C. **<u>Dollar General's Position on EEOC's Proposed Discovery Related to Any Less Discriminatory Alternatives</u>:**

   1. **<u>Depositions Sought by the EEOC from Dollar General</u>**: Dollar General has adequately answered Interrogatory No. 8, subject to appropriate objections, including but not limited to that the request is vague, overly broad, unduly burdensome, and seeks confidential information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, at this time, Dollar General does not object to the EEOC plan to depose a corporate representative related to less discriminatory alternatives considered by Dollar General, though Dollar General reserves its objections for when the EEOC provides more specifics regarding the scope of any requested deposition(s). Dollar

>General opposes the EEOC's discovery into "other measures" in place at Dollar General (such as its use of security cameras, etc.) because Dollar General's other security measures for current employees are unrelated to its criminal background check policy related to hiring its workforce. *See* Defendant's Objections to Plaintiff's Interrogatory No. 22.

**D.** **Less Discriminatory Alternative Discovery Sought by Dollar General**: Dollar General requires discovery on the EEOC's position as to why it believes any alternative procedure it proposes is "less discriminatory," yet sufficient to satisfy the considerations and goals behind Dollar General's criminal background check which is supported by business necessity.

**1.** **Written Discovery:**

**(1)** Any documents (including but not limited to studies, analyses, and other policies and procedures) that the EEOC believes support the alternative procedure it contends is less discriminatory yet still sufficient to satisfy Dollar General's business necessity for the criminal background check.

**2.** **Depositions:** Defendant intends to notice the following depositions:

**(1)** Any decision maker at the EEOC who is charged to make employment decisions related to adverse results found through criminal background check policies implemented by the EEOC and opinions related to whether any less discriminatory alternatives might exist.

**(2)** An EEOC Representative that who has been involved in creating a revised criminal background check policy, including those designed to be less discriminatory alternatives to a prior policy or process.

**(3)** An EEOC Representative who can discuss criminal background check policies and processes that they deem to be legal and/or less discriminatory alternatives to policies similar to Dollar General's criminal background check policies

**(4)** An EEOC Representative who can discuss all criminal background check policies challenged by the EEOC, and the outcome of those investigations, including any court or jury determination as to whether such policies were deemed to violate Title VII, and any less discriminatory alternatives that were implemented related to criminal background checks

13

      **(5)**    Any witness the EEOC identifies who will testify as to the legitimacy of the alternative procedure the EEOC proposes and how any less discriminatory alternative would accomplish the same business purpose, and whether any such suggested alternative would have, in fact, changed the alleged disparate impact on African American candidates.

      **(6)**    Any expert by the EEOC on this topic

**E.** **EEOC's Position as to Dollar General's Proposed Discovery**:

    EEOC will object to this discovery on relevance and privilege grounds.

**F.** **Status of Less Discriminatory Alternative Related Discovery Disputes**: Before Magistrate Judge Finnegan is the EEOC's second Motion to Compel (*see* Dkt. 88), which relates to security measures at the Dollar General stores (*see* Interrogatory No. 22). This discovery dispute is fully briefed and is before the Court. *See* Dkt. 88 (EEOC's Second Motion to Compel); and Dkt. 92 (Defendant's Response to the EEOC's Motion to Compel).

15

| | |
|---|---|
| */s/ Richard J. Mrizek* | /s/ *Joel S. Allen* |
| Richard J. Mrizek | Joel S. Allen |
| Jeanne B. Szromba | Ronald E. Manthey |
| Brandi Davis | Melissa M. Hensley |
| Equal Employment Opportunity Commission | **MORGAN, LEWIS & BOCKIUS LLP** |
| 500 West Madison Street, Suite 2000 | 1717 Main Street, Suite 3200 |
| Chicago, Illinois 60661 | Dallas, Texas 75201 |
| (312) 869-8105 | Telephone: 214.466.4000 |
| | Facsimile: 214.466.4001 |
| | joel.allen@morganlewis.com |
| | ron.manthey@morganlewis.com |
| | melissa.hensley@morganlewis.com |
| | |
| | James P. Looby |
| | **MORGAN, LEWIS & BOCKIUS LLP** |
| | 77 West Wacker Drive, 5th Floor |
| | Chicago, Illinois 60601 |
| | Telephone: 312.324.1000 |
| | Facsimile: 312.324.1001 |
| | jlooby@morganlewis.com |
| | |
| | **ATTORNEYS FOR DEFENDANT** |