**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 13 C 4307 |
| v. | ) ) | Judge Andrea Wood |
| DOLGENCORP, LLC d/b/a DOLLAR GENERAL, | ) ) ) | Magistrate Judge Sheila Finnegan |
| Defendant. | ) | |

**DOLLAR GENERAL'S OBJECTIONS TO MAGISTRATE JUDGE FINNEGAN'S**
**DISCOVERY RULINGS, DKT. 104,**
**REGARDING THE EEOC'S MOTION TO COMPEL**

Joel S. Allen
Ronald E. Manthey
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, Texas 75201
Telephone: 214.466.4000
Facsimile: 214.466.4001
joel.allen@morganlewis.com
ron.manthey@morganlewis.com

James P. Looby
**MORGAN, LEWIS & BOCKIUS LLP**
77 West Wacker Drive, 5th Floor
Chicago, Illinois 60601
Telephone: 312.324.1000
Facsimile: 312.324.1001
jlooby@morganlewis.com

Alexandra S. Tuffuor
**MORGAN, LEWIS & BOCKIUS LLP**
225 Franklin Street, 16th Floor
Boston, Massachusetts 02110
Telephone: 617.341.7700
Facsimile: 617.341.7701
atuffuor@morganlewis.com

ATTORNEYS FOR DEFENDANT

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................................. 1

GOVERNING STANDARD ............................................................................................... 3

ARGUMENT ...................................................................................................................... 4

I.    THE MAGISTRATE JUDGE'S CONCLUSION THAT DOLLAR GENERAL'S
OTHER "TESTS OR CHECKS" AND ANY CORRESPONDING STUDIES
ARE DISCOVERABLE WAS CLEARLY ERRONEOUS AND CONTRARY
TO LAW ...................................................................................................................... 4

    A.    Summary of the Parties' Respective Burdens in a Disparate Impact Case ........... 4

    B.    The Discovery Sought by the EEOC is Not Relevant .......................................... 6

        1.    Other "Tests or Checks" and Corresponding Studies Have No
Bearing on the EEOC's Burden to Demonstrate Disparate Impact
at Step 1 .................................................................................................... 7

        2.    Other "Tests of Checks" and Corresponding Studies Are Unrelated
to Dollar General's Burden to Prove Business Necessity at Step 2 ........... 9

        3.    The EEOC Cannot Use Dollar General's Other "Tests or Checks"
or Their Corresponding Studies at Step 3 to Demonstrate a Viable
Alternative to Dollar General's Criminal Background Check ................. 10

            a.    The DBA ..................................................................................... 11

            b.    Drug Testing Policy .................................................................... 13

            c.    Other Pre- and Post-Offer Employment "Tests or Checks,"
including Dollar General's Credit Check and Reference
Check Policies ............................................................................ 14

        4.    The EEOC's Other Miscellaneous Arguments as to Why Dollar
General's Other "Tests or Checks" and Corresponding Studies Are
Discoverable Are Without Merit ............................................................. 14

II.    THE MAGISTRATE JUDGE CLEARLY ERRED IN REJECTING DOLLAR
GENERAL'S ARGUMENT THAT IT SHOULD NOT HAVE TO ANSWER
INTERROGATORY NUMBERS 21, 22, AND 23 BECAUSE THE EEOC HAS
EXCEEDED THE INTERROGATORY LIMIT IN RULE 33(A)(1), AND
GOOD CAUSE DOES NOT EXIST FOR ADDITIONAL INTERROGATORIES ...... 16

    A.    The EEOC Has Exceeded the Twenty-Five Interrogatory Limit in Rule
33(a)(1) ............................................................................................................ 18

    B.    The EEOC Has Not Demonstrated a Particularized Need For Additional
Interrogatories ................................................................................................. 20

CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABN Amro, Inc. v. Capital Int'l Ltd.*,
    2006 U.S. Dist. LEXIS 3780 (N.D. Ill. Jan. 30, 2006) ............................................................6

*Allen v. City of Chicago*,
    351 F.3d 306 (7th Cir. 2003) ..........................................................................................6, 10

*Allen v. Seidman*,
    881 F.2d 375 (7th Cir. 1989) ...............................................................................................5

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
    2002 U.S. Dist. LEXIS 6199 (W.D. Va. Mar. 18, 2002).......................................................19

*Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*,
    187 F.R.D. 578 (D. Minn. 1999)..........................................................................................21

*Babrocky v. Jewel Food Co.*,
    773 F.2d 857 (7th Cir. 1985) ...............................................................................................8

*Bew v. City of Chicago*,
    252 F.3d 891 (7th Cir. 2001) ...............................................................................................5

*Blair v. Defender Servs.*,
    386 F.3d 623 (4th Cir. 2004) .............................................................................................11

*Bourdganis v. N. Trust Bank*,
    2008 U.S. Dist. LEXIS 82089 (E.D. Mich. Oct. 16, 2008) ..................................................19

*Campeau v. Neuroscience, Inc.*,
    2015 U.S. Dist. LEXIS 4813 (W.D. Wis. Jan. 15, 2015) .................................................8, 12

*Cheek v. W. & S. Life Ins. Co.*,
    31 F.3d 497 (7th Cir. 1994) .................................................................................................8

*Duncan v. Paragon Publishing, Inc.*,
    204 F.R.D. 127 (S.D. Ind. 2001)....................................................................................20, 21

*E.E.O.C. v. Harvey L. Walner & Assocs.*,
    91 F.3d 963 (7th Cir. 1996) ...............................................................................................15

*EEOC v. Dial Corp.*,
    469 F.3d 735 (8th Cir. 2006) ............................................................................................5, 9

*EEOC v. Freeman*,
  961 F. Supp. 2d 783 (D. Md. 2013) ..............................................................5, 7, 9

*El v. SEPTA*,
  479 F.3d 232 (3rd Cir. 2007) ..................................................................................9

*Firefighters' Inst. for Racial Equality v. City of St. Louis*,
  220 F.3d 898 (8th Cir. 2000) ..................................................................................9

*Fletcher v. Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP*,
  537 F. Supp. 2d 1028 (W.D. Mo. 2008) ..................................................................9

*Glaxo, Inc. v. Torphram, Inc.*,
  1996 LEXIS 10139 (N.D. Ill. July 18, 1996).........................................................6

*Griggs v. Duke Power Co.*,
  401 U.S. 424 (1971)................................................................................................5

*Hudson v. Chi. Transit Auth.*,
  375 F.3d 552 (7th Cir. 2004) ................................................................................15

*Imbody v. C & R. Plating Corp.*,
  2010 U.S. Dist. LEXIS 12682 (N.D. Ind. Feb. 12, 2010)......................................19

*Kaprelian v. Bowers*,
  2010 U.S. Dist. LEXIS 53390 (W.D. Wis. May 28, 2010) ...................................17

*Lewis v. City of Chicago*,
  643 F.3d 201 (7th Cir. 2001) ...............................................................................5, 9

*Life Music v. Broadcast Music, Inc.*,
  41 F.R.D. 16 (S.D.N.Y. 1966) ..............................................................................21

*Lopez v. City of Lawrence*,
  2014 U.S. Dist. LEXIS 124139 (D. Mass. Sept. 5, 2014) .....................................10

*Med. Assur. Co. v. Weinberger*,
  2011 U.S. Dist. LEXIS 62580 (N.D. Ill. May 26, 2011) ......................................20

*Mitchell Co. v. Campus*,
  2008 U.S. Dist. LEXIS 47505 (S.D. Ala. June 16, 2008)......................................19

*NAACP v. N. Hudson Reg'l Fire & Rescue*,
  665 F.3d 464 (3rd Cir. 2011) ..................................................................................6

*Ricci v. DeStefano*,
  557 U.S. 557 (2009)................................................................................................6

*Schnelbaecher v. Baskin Clothing Co.*,
  887 F.2d 124 (7th Cir. 1989) ...................................................................8

*Sirazi v. Panda Express, Inc.*,
  2009 U.S. Dist. LEXIS 109558 (N.D. Ill. Nov. 24, 2009) .......................15

*Superior Communs. v. Earhugger, Inc.*,
  257 F.R.D. 215 (C.D. Cal. 2009) ..............................................................19

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
  235 F.R.D. 521 (D.D.C. 2006) ...................................................................19

*Vardon Golf Co. v. BBMG Golf Ltd.*,
  156 F.R.D. 641 (N.D. Ill. 1994) ..................................................................7

*Walech v. Target Corp.*,
  2012 U.S. Dist. LEXIS 44119 (W.D. Wash. Mar. 28, 2012) ...................18

*Watson v. Fort Worth Bank & Trust*,
  487 U.S. 977 (1998) .....................................................................................5

*Webb v. CBS Broadcasting, Inc.*,
  2011 U.S. Dist. LEXIS 23258 (N.D. Ill. Mar. 8, 2011) .............................4

*Weeks v. Samsung Heavy Indus. Co., Ltd.*,
  126 F.3d 926 (7th Cir. 1997) ......................................................................3

## STATUTES

42 U.S.C. § 2000e-2(k) ....................................................................................4

42 U.S.C. § 2000e-2(k)(1) ...........................................................................5, 4

42 U.S.C. § 2000e-2(k)(1)(A)(ii) .....................................................................6

42 U.S.C. § 2000e-2(k)(1)(B)(i) .....................................................................10

42 U.S.C.§ 2000e-2(k)(1)(C) ...........................................................................6

## RULES

Fed. R. Civ. P. 26(b)(2) ..................................................................................16

Fed. R. Civ. P. 26(b)(2)(C) .............................................................................16

Fed. R. Civ. P. 33 ............................................................................................16

Fed. R. Civ. P. 33(a)(1).......................................................................... passim

Fed. R. Civ. P. 72(a) ...............................................................................................3, 4

**OTHER AUTHORITIES**

*Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964*, No. 915.002 (Apr. 25, 2012) ...........................................10

Defendant Dolgencorp, LLC ("Dollar General") hereby files its objections to Magistrate Judge Finnegan's Discovery Rulings, Dkt. 104, regarding the EEOC's motion to compel, Dkt. 88. For the reasons that follow, the Court should reverse the magistrate judge's rulings with respect to (1) requiring Dollar General to produce the most recent version of its Desired Behavior Assessment ("DBA"), the DBA's scoring method, and any documents demonstrating whether Dollar General has performed any studies testing, or analysis of whether the DBA has resulted in reductions in employee theft and shrinkage since 2004; (2) requiring Dollar General to produce its drug testing policy; (3) requiring Dollar General to produce information related to its other pre- and post-offer employment screens, including its credit and reference check policies; and (4) the magistrate judge's rejection of Dollar General's objections to the number of interrogatories that the EEOC has propounded on the ground that the EEOC exceeded the limit in Federal Rule of Civil Procedure 33(a)(1) without good cause.

## BACKGROUND

The EEOC filed this suit alleging solely that Dollar General's criminal background screening process as applied to candidates to whom a conditional offer of employment has been extended disparately impacts African-Americans. Dkt. 1 ¶ 11. Dollar General denies the EEOC's allegations. *See, e.g.*, Dkt. 13.

On December 2, 2014, the EEOC served Dollar General with its Second Set of Interrogatories and Second Requests for Production. Dkts. 88-2; 88-3. Dollar General served its responses and objections to the discovery requests on January 8, 2015. Dkts. 88-5; 88-6; *see also* Dkts. 86-6; 86-7; 86-8; 86-9. With respect to the four interrogatories in the EEOC's Second Set of Interrogatories (Numbers 20, 21, 22, and 23), Dollar General refused to answer them for numerous reasons, including because the EEOC's exceeded the twenty-five interrogatory limit provided in Federal Rule of Civil Procedure 33(a)(1) and because the information sought is

1

neither related to Dollar General's criminal background check nor any other pertinent issue in the case. Dkt. 88-5. In response to the EEOC's Second Request for Production of Documents, Dollar General similarly objected to the requests (which also did not request information related to Dollar General's criminal background check policy) as being improper, irrelevant, and unlikely to lead to the discovery of relevant material information. Dkt. 88-6.

On February 20, 2015, the EEOC filed a motion to compel, which in relevant part sought an order requiring Dollar General to respond to its Interrogatory Numbers 20-23 and Document Requests 26, 28, 29, and 30. *See* Dkt. 88; *see also* Dkt. 92 (Dollar General's response to the motion to compel). On April 1, 2015, the magistrate judge issued an oral ruling on the motion, which was summarized in a written order (in response to a Dollar General motion, Dkt. 98) on April 20, 2015. The written order encompassed numerous rulings, but those Dollar General objects to are the following:

- **EEOC Document Requests 28 and 29**:

  o <u>The EEOC asked Dollar General to produce</u>: (**No. 28**) "Documents sufficient to show any Desired Behaviors Assessment used by Dollar General from 2004 to the present"; and (**No. 29**) "Documents sufficient to show the scoring methods for the Desired Behaviors Assessment." Dkt. 88-6 at 5-7.

  o <u>Magistrate Judge Ruling</u>: Dollar General must produce a copy of its most recent version of its DBA test and the scoring method for the test. Dkt. 104 at 2; *see* April 1, 2015 Transcript, attached as Exhibit 1, 8:20-23:1.

- **EEOC Document Request 30**:

  o <u>The EEOC asked Dollar General to produce</u>: "Documents sufficient to describe and provide any drug testing, credit checks, criminal background checks, Desired Behavior Assessment ('DBA'), and/or reference checks done by Dollar General for its employees or conditional hires from January 1, 2004, to the present, including any policies or operating procedures setting forth any of the aforementioned methods of evaluation." Dkt. 88-6 at 7.

- o <u>Magistrate Judge Ruling</u>: Dollar General must produce the most recent copy of its drug testing policy and any policies relating to credit checks or reference checks (if they exist). Dkt. 104 at 2; *see* Exhibit 1, 28:3-30:11.

- **EEOC Interrogatory Number 21**:

  - o <u>EEOC Request</u>: With respect to Defendant's DBA (Desired Behavior Assessment) test,

    (a) When and why did Defendant begin using the test?

    (b) Identify any studies done by or records kept by Defendant which track the incidents of retail theft and/or amount of shrinkage at Dollar General stores before and after Defendant began using such tests.

  - o <u>Magistrate Judge Ruling</u>: Dollar General must "produce documents reflecting any studies, testing, or analysis of whether [its] use of the DBA has resulted in reductions in employee theft and shrinkage" from 2004 to the present. Dkt. 104 at 2-3; *see* Exhibit 1, 36:16-46:3.

- **EEOC Interrogatory Numbers 21 to 23**:

  <u>Magistrate Judge Ruling</u>: Dollar General's refusal to answer the interrogatories on the ground that they exceed the twenty-five interrogatory limit in Rule 33(a)(1) is overruled. Dkt. 104 at 3; *see* Exhibit 1, 34:12-36:17.

Dollar General contends that the magistrate judge clearly erred in making each of these rulings.

## GOVERNING STANDARD

A "district court's review of any discovery-related decisions made by the magistrate judge is governed by Rule 72(a) of the Federal Rules of Civil Procedure." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). Rule 72(a) states as follows:

Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. *The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.*

Fed. R. Civ. P. 72(a) (emphasis added); *see Webb v. CBS Broadcasting, Inc.*, 2011 U.S. Dist. LEXIS 23258, at *6 (N.D. Ill. Mar. 8, 2011).

## ARGUMENT

The information the magistrate judge ordered Dollar General to produce is not relevant to the case pled, charged, or investigated by the EEOC. The EEOC has repeatedly maintained that this case concerns Dollar General's use of a *criminal background check* that allegedly has a disparate impact on African-American candidates to whom a conditional offer of employment has been extended. Dkt. 1 ¶ 11; *see* Dkt. 88 at 3. Through its second set of discovery requests, the EEOC has attempted to (1) impermissibly expand the bounds of the lawsuit to include the other "tests or checks"[1] that Dollar General uses during its hiring process, and (2) abuse the rules of discovery by unnecessarily propounding excessive interrogatory requests. The magistrate judge thus clearly erred in ordering production of Dollar General's other "tests or checks" and overruling Dollar General's objection to the EEOC's exceeding of the limit in Rule 33(a)(1). This Court should reverse those rulings.

I.      **The Magistrate Judge's Conclusion that Dollar General's Other "Tests or Checks" and Any Corresponding Studies Are Discoverable Was Clearly Erroneous and Contrary to Law.**

A.      **Summary of the Parties' Respective Burdens in a Disparate Impact Case.**

A disparate impact case, as the EEOC has pled here, involves three different steps ("Steps 1-3"), with the burden of persuasion shifting between sides at each step. *See* 42 U.S.C. § 2000e-2(k). At Step 1, the EEOC must establish that Dollar General's criminal background check has a disparate impact. § 2000e-2(k)(1). To meet its burden, the EEOC must show, using a "reliable and accurate statistical analysis performed by a qualified expert," that Dollar General's facially

---

[1] For consistency, Dollar General will refer to the collective group of employee screening measures referred to in Interrogatory Numbers 20 and 21, and Document Requests 28, 28, and 29—which do not include Dollar General's criminal background check—as Dollar General's "other 'tests or checks.'"

neutral practice "'has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.'" *EEOC v. Freeman*, 961 F. Supp. 2d 783, 786 (D. Md. 2013) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1998)). Dollar General contends that the EEOC cannot satisfy Step 1, which if true, would end the case.[2]

If the EEOC is able to establish that Dollar General's criminal background check has a disparate impact, the case proceeds to Step 2. At Step 2, the burden of persuasion shifts to Dollar General to demonstrate its criminal background check policy is "job related" or "consistent with business necessity." *See* 42 U.S.C. § 2000e-2(k)(1); *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971); *see also EEOC v. Dial Corp.*, 469 F.3d 735, 742 (8th Cir. 2006) (explaining that an employer can prove business necessity by "demonstrate[ing] the procedure is sufficiently related to safe and efficient job performance"); *Bew v. City of Chicago*, 252 F.3d 891, 894 (7th Cir. 2001) (explaining that "*Griggs* does not distinguish business necessity and job relatedness as two separate standards"). Thus, the question of "business necessity" is a determination that focuses on the *reasoning* and *rationale* behind the challenged policy—not whether another practice or procedure could function as a less discriminatory alternative. *See also Lewis v. City of Chicago*, 643 F.3d 201, 205 (7th Cir. 2001) ("In disparate impact litigation the question is not whether a given test or standard is lawful standing alone, but whether its application has been adequately justified.").

If Dollar General satisfies its burden, the case moves to the third step. At Step 3, the EEOC can only succeed in the case if it proves "that [Dollar General] refuses to adopt an available alternative employment practice that has less disparate impact and serves the

---

[2] "[A] shoddy showing of disparate impact will not require the defendant even to produce evidence in justification of the challenge practice." *Allen v. Seidman*, 881 F.2d 375, 378 (7th Cir. 1989); *see Freeman*, 961 F. Supp. 2d at 786-87 (granting summary judgment in favor of the defendant because the EEOC failed to demonstrate a disparate impact).

employer's legitimate needs." *See Ricci v. DeStefano*, 557 U.S. 557, 578 (2009) (citing 42 U.S.C. § 2000e-2(k)(1)(A)(ii) and (C)). The EEOC's proposed alternative "must be available, equally valid[,] and less discriminatory." *Allen v. City of Chicago*, 351 F.3d 306, 312-13 (7th Cir. 2003) (stating that "a vague or fluctuating proposed alternative ordinarily frustrates [the] statutory scheme [of 42 U.S.C. § 2000e-2(k)(1)(A)(ii)]"). The EEOC must also set forth "supporting evidence" demonstrating the alternative is viable; simply "indentifying potential alternatives, standing alone," will not survive a motion for summary judgment. *See NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 477 (3rd Cir. 2011) (quoting *Ricci*, 557 U.S. at 591). And importantly, the EEOC must give Dollar General an opportunity to adopt the "viable" alternative.[3] *See* 42 U.S.C. § 2000e-2(k)(1)(A)(ii).

**B.      The Discovery Sought by the EEOC is Not Relevant.**

A document's relevancy is determined by looking at the elements of the claims and defenses asserted and the procedural steps of this case, and it is the EEOC's burden to demonstrate that Dollar General's other "tests or checks" are relevant to this case. *See Glaxo, Inc. v. Torphram, Inc.*, 1996 LEXIS 10139, at *12-13 (N.D. Ill. July 18, 1996) ("The burden is on the movant to squarely establish that the documents it seeks are relevant."); *see also ABN Amro, Inc. v. Capital Int'l Ltd.*, 2006 U.S. Dist. LEXIS 3780, at *6 (N.D. Ill. Jan. 30, 2006) ("When relevancy is not apparent on the face of the discovery request, courts generally require that the party seeking discovery . . . has the burden to show that the information is relevant or reasonably calculated to lead to the discovery of admissible evidence." (citing *Vardon Golf Co.*

---

[3] The EEOC has never provided Dollar General with an alternative practice that it claims is less discriminatory yet still serves Dollar General's legitimate business needs, even though the burden is on the *plaintiff* to establish an alternative policy with a less discriminatory effect. *See Allen*, 351 F.3d at 313 ("[T]he statutory scheme requires plaintiffs to demonstrate a viable alternative *and* give the employer an opportunity to adopt it.") (emphasis added).

*v. BBMG Golf Ltd.*, 156 F.R.D. 641, 650 (N.D. Ill. 1994) (requiring the party to articulate "what kind of information it reasonably expects to find in the documents sought and how this will lead to other admissible evidence"))). To meet its burden and establish the documents are relevant, the EEOC must adequately connect the documents it seeks with an issue in the case.

Here, the EEOC has never explained how Dollar General's other pre- and post-offer "test or checks" are relevant to any issue in the case. It has only made general conclusory allegations that its discovery requests are legitimate discovery inquiries because discovery is meant to be broad. *See, e.g.*, Dkt 88 at 4; Exhibit 1. Therefore, as explained below, Interrogatory Number 21, and Document Requests 28, 29, and 30, are really just an attempt by the EEOC to abuse the discovery process by expanding the bounds of this lawsuit and impermissibly challenging Dollar General's justified hiring practices. The magistrate judge thus clearly erred in focusing on the burden of producing the documents—as opposed to whether it would lead to the discovery of relevant evidence—in ruling that Dollar General must produce information related to its other "tests or checks," *see, e.g.*, Exhibit 1, 11:18-19; 13:1-13, 22-25; 14:1-6; 28:3-24.

## 1. Other "Tests or Checks" and Corresponding Studies Have No Bearing on the EEOC's Burden to Demonstrate Disparate Impact at Step 1.

Any argument that other "tests or checks" are relevant to the issue of disparate impact at Step 1 is without merit, as the EEOC can only establish disparate impact by using a "reliable and accurate statistical analysis performed by a qualified expert." *See Freeman*, 961 F. Supp. 2d at 786. In its motion to compel, the EEOC argued that it needed to understand all of the employment screens that Dollar General uses in order "[t]o conduct its analysis and confirm that it is evaluating the correct pool of candidates[.]" Dkt. 88 at 4. That argument is misplaced; the EEOC is fully aware of the "correct pool of candidates." The "pool of candidates" encompasses the individuals the EEOC has identified since the beginning of the case: those individuals to

whom a conditional offer of employment was extended who were subject to Dollar General's criminal background check—and specifically, those whose offers were rescinded because they failed the background check. Any other "tests or checks" Dollar General employs in its hiring practice will not change the pool, and everyone, including the EEOC, knows that.

If the EEOC reasonably believed that other "tests or checks" were germane to the numbers behind its statistical analysis, the EEOC was required to investigate them prior to filing the complaint in this case. *See Schnelbaecher v. Baskin Clothing Co*., 887 F.2d 124, 127 (7th Cir. 1989) ("allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge" (quoting *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 863 (7th Cir. 1985))); *see also Campeau v. Neuroscience, Inc*., 2015 U.S. Dist. LEXIS 4813, at *19 (W.D. Wis. Jan. 15, 2015) ("[T]he general rule [is that] a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." (quoting *Cheek v. W. & S. Life Ins. Co*., 31 F.3d 497, 500 (7th Cir. 1994))). But the EEOC has never before inquired into Defendant's other "tests or checks" and still only asserts that Dollar General's *criminal background check* has a disparate impact on African-American candidates. Nothing in the EEOC's complaint, the underlying charge, or in the underlying-charge investigation or conciliation ever encompassed any of Dollar General's other pre- or post-offer employment tests. *See, e.g.*, Dkt. 1. Accordingly, the *only* part of Dollar General's hiring process that may be used to demonstrate disparate impact at Step 1 is Dollar General's criminal background check policy, *see Schnelbaecher*, 887 F.2d at 127; *Campeau*, 2015 U.S. Dist. LEXIS 4813, at *19, and the numbers are what they are, regardless of any other "tests or checks."

Because Dollar General's other "tests or checks" cannot alter the numbers behind the statistical analysis the EEOC must perform to demonstrate disparate impact at Step 1, relevance to Step 1 could not have been the basis for the magistrate judge's ruling that the DBA, Dollar General's drug testing policy, or any other "tests or checks" are relevant to the case. The magistrate judge's reliance on these tests being relevant to Step 1 was clearly erroneous.

> **2.** **Other "Tests of Checks" and Corresponding Studies Are Unrelated to Dollar General's Burden to Prove Business Necessity at Step 2.**

The EEOC alternatively contends that Dollar General's other "tests or checks" are relevant to the issue of business necessity, but that argument is a red-herring. At the business necessity step, the focus is on the policy or test at issue, not alternatives that may not exist. *See Lewis*, 643 F.3d at 205. The only thing that Dollar General would need to demonstrate is that its *use* of the criminal background check policy is "related to safe and efficient job performance and is consistent with business necessity." *See Dial Corp.*, 469 F.3d at 742 (quoting *Firefighters' Inst. for Racial Equality v. City of St. Louis*, 220 F.3d 898, 904 (8th Cir. 2000)).

Dollar General will satisfy a business necessity showing because it is unquestionable that employers have an obligation to undertake reasonable measures to ensure the safety and well-being of its employees, patrons, and assets. *See, e.g.*, *El v. SEPTA*, 479 F.3d 232, 245-49 (3rd Cir. 2007). And as Dollar General explained in its supplemental interrogatory responses (dated November 11, 2014, attached as Exhibit 2, at 29-31), there is no doubt a correlation between individuals with criminal convictions and subsequent violent, dangerous, dishonest or otherwise improper behavior. Indeed, courts have held that policies barring employees with certain criminal convictions are a legitimate means to satisfy an employer's objectives and, thus, justified by business necessity. *See SEPTA*, 479 F.3d at 245-49 ("If someone with a violent conviction presents a materially higher risk than someone without one, no matter which other

factors an employer considers, then [defendant] is justified in not considering people with those convictions."); *Fletcher v. Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP*, 537 F. Supp. 2d 1028, 1031-32 (W.D. Mo. 2008). Even the *EEOC*, which admittedly has its own criminal background check policy, must concede that the use of criminal convictions in an employer's hiring practice is consistent with business necessity. *See* EEOC Enforcement Guidance, *Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964*, No. 915.002 (Apr. 25, 2012)*, available at* http://www.eeoc.gov/laws/guidance/upload/arrest_conviction.pdf.

Whether Dollar General has other employment screening methods is irrelevant to the business reasons and rationale behind why Dollar General uses a criminal background check. The magistrate judge's reliance on the EEOC's business necessity argument in making her rulings also constitutes clear error.

> ### 3. The EEOC Cannot Use Dollar General's Other "Tests or Checks" or Their Corresponding Studies at Step 3 to Demonstrate a Viable Alternative to Dollar General's Criminal Background Check.

The EEOC's only remaining argument is that the other "tests or checks" are relevant to its *own* ultimate burden to prove a less discriminatory alternative. This argument fails. At Step 3, the EEOC would be required to establish that the alternative is "as valid as the [criminal background check] actually administered" and that the alternative proposed is a "'viable alternative.'" *See Lopez v. City of Lawrence*, 2014 U.S. Dist. LEXIS 124139, at *77 (D. Mass. Sept. 5, 2014) (quoting *Allen*, 351 F.3d at 313). Here, the EEOC has never (1) suggested *any* alternative to Dollar General's criminal background check, let alone a viable alternative, nor (2) given Dollar General the opportunity to adopt one—not during the charge stage or in its pleading—so the EEOC necessarily cannot satisfy its burden at Step 3, regardless of whether Dollar General uses other employment screens. *See Allen*, 351 F.3d at 313.

### a.  The DBA.

On its face, the DBA cannot assist the EEOC at Step 3 to demonstrate a viable alternative to the criminal background check, and the EEOC's inability to show a connection between the DBA and the background check is not surprising. The criminal background check has completely different objectives and examines different criteria than does the DBA. In recognizing its obligation to provide a safe workplace environment, Dollar General uses its criminal background check to prevent issues, among other things, such as workplace violence and employee theft, as well as to protect the safety and well-being of its employees, patrons, and company assets by preventing issues like employee misconduct and vandalism. *See generally Blair v. Defender Servs.*, 386 F.3d 623, 630 (4th Cir. 2004) ("With respect to [plaintiff's] claim of negligent hiring, we find that there is a genuine issue of material fact concerning whether Harris' violent propensities should have been discovered by [defendant] prior to Harris being placed into an employment situation in which he posed a threat to Virginia Tech students."). Conversely, the DBA assesses five types of individual behavior: customer service aptitude, honesty, responsibility, punctuality, and productivity (which the EEOC has already been able to verify (s*ee* Exhibit 3, Documents Bates numbered DG-EEOC-FH-000520 to 000543, page 4, to be filed under seal, subject to the Court's ruling on Dollar General's motion, Dkt. 107). It is designed to assess a candidate's ability to perform on the job, which includes an individual's honesty in performing work functions (beyond simply stealing on the job). It is not necessarily designed nor intended to assess whether an individual has a propensity to engage in (or has in fact engaged in) illegal, violent, dangerous, or other behavior that may pose a heightened risk to Dollar General employees, customers, or assets. That is what a criminal background check is supposed to catch.

Furthermore, the DBA is a *self-assessment*, and any individual can say, "Yes, I am honest. Yes, I will be a good employee." A dishonest answer on the DBA, which goes to an

individual's propensity for being truthful in completing assigned tasks and responsibilities, does not have the same significance as an adjudicated criminal conviction with respect to predicting future misconduct. Providing the EEOC with the opportunity to physically examine the DBA, its scoring method, or any analyses linking it to employee theft or shrinkage will not change that stark fact. It also will not change the fact that the EEOC did not consider the DBA to be relevant prior to filing this suit and that the EEOC cannot now rely on it to prove its case. *See generally Campeau*, 2015 U.S. Dist. LEXIS 4813, at *19.

In addition, because applicants take the DBA test before receiving a conditional offer of employment, and do not undergo a criminal background check until after receiving a conditional offer of employment, it follows that every person excluded from employment by the criminal background check was *not* excluded from employment by the DBA. In fact, as the EEOC would agree, since 2008 alone, thousands of individuals have passed the DBA but later failed the criminal background check. If that many candidates were able to pass the DBA, receive a conditional offer of employment, and *then* fail the criminal background check, it is impossible for the EEOC to show that the DBA could serve as a viable, less discriminatory alternative to the background check—which is what the EEOC's relevancy argument is based on. It defies logic to say that something can be a valid, viable alternative to the criminal background check when it does not examine the same criteria, or even have or achieve the same objectives. Again, an examination of the DBA will not change the number of candidates the DBA excludes (or notably, does not exclude). Nor will it change the criteria the DBA examines, regardless of whether the DBA and criminal background check both test for "trustworthiness" in some capacity, as the EEOC contends, s*ee* Exhibit 1, 11:20-12:17.

Although some overlap might exist between the candidates who are eliminated at the DBA stage and candidates who would likewise be eliminated at the criminal background check stage, the interplay between the DBA and the criminal background check is inconsequential. The interplay is no different than the overlap occurring where an individual would be excluded from consideration because of both an inadequate resume and a prior criminal conviction. The double rationale for denying the individual an offer of employment just shows the individual was a substandard candidate on a multitude of levels; it does not demonstrate that Dollar General's initial resume screening process could replace its criminal background check policy. The same is true of the DBA—any overlap is purely coincidental. The DBA is thus irrelevant to the EEOC's burden at Step 3 to prove a less discriminatory alternative. The EEOC must litigate the charge that it investigated and the complaint that it filed, both of which related only to Dollar General's criminal background check policy.

### b. Drug Testing Policy.

The same points regarding the DBA at Step 3 are even more apparent when considered in conjunction with Dollar General's drug testing policy. The EEOC stated at the April 1, 2015 hearing:

> So I'll say if the concern is we don't want people who are drug users at the workplace, another potential way to address that would be maybe an existing drug test which we do not have the specifics on. So I think, again, to argue whether there are other ways to address their stated concerns for their business necessity, a drug test clearly is part of that, part of those measures they are currently taking.

Exhibit 1, 23:13-21. However, no one would say that a drug test elicits the same information as a criminal background check policy. A drug test indicates whether a person at that particular moment in time has recently consumed an illegal substance and whether there is a risk that the individual may be under the influence of a given substance during his employment—and thus, unable to satisfy the demands of the individual's given position while on the job and pose a

13

safety risk to himself or others. That is separate and distinct from the criminal background check, which excludes those applicants who pose a heightened risk or direct threat to the safety and well-being of Dollar General's employees, patrons, and company assets as a result of their prior adjudicated conduct. The magistrate judge did not address, and the EEOC continually ignores, the fact that a drug test will not demonstrate whether a person has engaged in, among other things, certain criminal, dangerous, or violent behavior in the past and, as a result, is more likely to do so in the future.

In addition, even if there is some overlap between candidates who would be excluded under both Dollar General's criminal background check policy and Dollar General's drug testing policy, that peripheral overlap does not mean that the drug test policy could replace the criminal background check policy or function as a viable alternative—which is what the EEOC's conclusory argument implies. *See* Exhibit 1, 23:13-21. The two policies have different overall objectives and operate independently, making the drug testing policy irrelevant to whether the EEOC can prove that a less discriminatory alternative to Dollar General's criminal background check policy exists. The magistrate judge clearly erred in concluding otherwise.

### c. Other Pre- and Post-Offer Employment "Tests or Checks," including Dollar General's Credit Check and Reference Check Policies.

For the same reasons discussed in Sections 3.a. and 3.b. with respect to the DBA and Dollar General's drug testing policy, Dollar General's other "tests or checks"—including any credit and reference checks—are irrelevant to the EEOC's burden to prove a viable alternative to the criminal background check. None evaluate the same criteria or achieve the same objectives as the criminal background check, and therefore, they cannot serve as a viable alternative to the background check. The magistrate judge thus clearly erred in ordering Dollar General to produce information regarding any credit and reference checks.

**4.** **The EEOC's Other Miscellaneous Arguments as to Why Dollar General's Other "Tests or Checks" and Corresponding Studies Are Discoverable Are Without Merit.**

Ignoring the foregoing, the EEOC implies generally that Dollar General has not given the EEOC an overview of Dollar General's hiring process. That argument should be disregarded because Dollar General has actually given the EEOC a step-by-step outline of its hiring process, as well as Dollar General's considerations in extending an offer of employment to its candidates (which the magistrate judge reviewed, in part, *see* Exhibit 1, 10:12-11:6).[4] As demonstrated by the EEOC's statements at the April 1, 2015 hearing, the EEOC's real contention is that it wants to know about *all* of the steps of Dollar General's hiring process and all of the minute details.[5] But as discussed, the information sought has nothing to do with disparate impact or Dollar General's burden to establish business necessity. It is likewise irrelevant to the EEOC's burden of proving there is a less discriminatory alternative to Dollar General's criminal background check policy *and* that it gave Dollar General an opportunity to adopt it. (Again, the EEOC has done neither.) The only explanation for the discovery requests is the EEOC is attempting to either (1) use the discovery tools to engage in a prohibited fishing expedition, or (2) turn this case into an arena for this Court to second-guess Dollar General's other business judgments and hiring practices, which are both highlighted by the EEOC's repeated rejection of Dollar General's numerous offers to provide the EEOC with documents in exchange for the EEOC's

---

[4] Dollar General produced the documents Bates numbered 000520-543, which discuss Dollar General's hiring process and give an overview of the DBA. *See* Exhibit 3, to be filed under seal, Dkt. 107. Dollar General further outlined the pertinent steps of its hiring procedures in its answers and objections to interrogatory numbers 3 and 4. *See* Dkt 92-1 at 14-16. The EEOC is also able to take the deposition of two current Dollar General Store Managers who can provide an explanation of Dollar General's hiring process. Dkt. 104.

[5] At the parties' status hearing on April 7, 2015, the Court indicated that it anticipated ruling that the EEOC's own criminal background check policy was irrelevant to this case. Such a ruling would be inconsistent with a ruling here that the EEOC is entitled to discover the ins and outs of Dollar General's other "tests or checks" and that the "tests or checks" are somehow relevant to this case. At a minimum, if the Court finds that all of Dollar General's employment screening methods are relevant and discoverable, Dollar General should *at least* be entitled to discover the EEOC's own criminal background check policy.

agreement to limit the use of the documents to *this* particular case, *see, e.g.*¸ Exhibit 1, 15:13-16:4). Neither attempt is permissible. *See Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 562 (7th Cir. 2004) (courts "will not second-guess [a] decision-makers' business judgment" in the employment context); *Sirazi v. Panda Express, Inc.*, 2009 U.S. Dist. LEXIS 109558, at *11-12 (N.D. Ill. Nov. 24, 2009) ("the Seventh Circuit has often said that 'discovery is not to be used as a fishing expedition'" (quoting *E.E.O.C. v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971-72 (7th Cir. 1996))). This Court should put an end to these improper discovery tactics.

In sum, the existence of other Dollar General "tests or checks" has no bearing on the EEOC's burden to prove disparate impact or Dollar General's burden to establish that the background check policy is justified by business necessity. The EEOC likewise has not established that the other "tests or checks" are related to a viable less discriminatory alternative, as the EEOC has never provided an explanation as to how Dollar General's other "tests or checks" (1) address the same criteria or have the same objectives as the criminal background check, or (2) could operate *in place of*, and serve the same purpose as, the criminal background check policy. The magistrate judge should have concluded that Dollar General's other "tests or checks" are irrelevant to the issues in this case, and therefore, ordering Dollar General to produce documents related to its DBA and drug testing policy in response to Interrogatory Number 20 and Document Requests 28, 29, and 30 constitutes clear error. The Court should reverse those parts of the magistrate judge's ruling, Dkt. 104.

II.     **The Magistrate Judge Clearly Erred in Rejecting Dollar General's Argument that It Should Not Have to Answer Interrogatory Numbers 21, 22, and 23 Because the EEOC Has Exceeded the Interrogatory Limit in Rule 33(a)(1), and Good Cause Does Not Exist For Additional Interrogatories.**

Federal Rule of Civil Procedure 33 provides, "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including

all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2).'"[6] Fed. R. Civ. P. 33(a)(1). The EEOC is over the twenty-five interrogatory limit, so the Court cannot compel Dollar General to respond to the EEOC's excess interrogatory requests unless the Court gives the EEOC express consent to exceed the Rule 33(a)(1) limit—which the EEOC did not request prior to propounding its additional interrogatories. *See Kaprelian v. Bowers*, 2010 U.S. Dist. LEXIS 53390, at *5-7 (W.D. Wis. May 28, 2010) ("The plaintiff's interrogatories exceed the [twenty-five interrogatory] limitation . . . and, therefore, the court will not compel the defendants to answer any interrogatories.").

In rejecting Dollar General's contention that it should not have to answer Interrogatory Numbers 21-23 on the ground that the EEOC has exceeded the twenty-five interrogatory limit, the magistrate judge declined to count just how many interrogatories that the EEOC has propounded, referring to the Rule 33(a)(1) limit as an "arbitrary number." *See* Exhibit 1, 34:12-15. The judge did this despite noting at the hearing that she did not think "some [of the EEOC's] interrogatory questions . . . were necessarily a good use of an interrogatory," *id.*, 34:15-17, and that the requests "seem[ed] more like a document request," *id.*, 39:4-5.

Dollar General agrees with the magistrate judge's sentiment that all cases are different, but the Federal Rules of Civil Procedure and the twenty-five interrogatory limit were drafted and put into effect for a reason. The drafters of the Federal Rules of Civil Procedure did not find twenty-five to be an arbitrary number. That is why a party may seek *leave of court* to propound more than twenty-five interrogatories, and why the EEOC should not be given an endless ticket to serve interrogatories beyond the express limits in Rule 33(a)(1) without demonstrating a

---

[6] In determining whether to grant leave to propound additional interrogatory requests, the Court must consider whether "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; or whether "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[.]" Fed. R. Civ. P. 26(b)(2)(C).

particularized need for them. The EEOC should have abided by the twenty-five interrogatory limit unless it received explicit permission from the Court to exceed it *after* demonstrating good cause existed. As discussed below, the magistrate judge should have: (1) counted the number of interrogatories, including discrete subparts, to verify Dollar General's argument that the EEOC has exceeded the limit explicitly set forth in Rule 33(a)(1); (2) required the EEOC to precisely articulate why it needs more than twenty-five interrogatories at this time; and (3) determined that *good cause* does not exist for the EEOC to seek more than the limit. The magistrate judge clearly erred in failing to do so, and this Court should reverse the magistrate judge's ruling, Dkt. 104 at 3, and determine that good cause does not exist for the EEOC to propound more than twenty-five interrogatories.

> **A.      The EEOC Has Exceeded the Twenty-Five Interrogatory Limit in Rule 33(a)(1).**

The EEOC's first set of interrogatories included "nineteen" numbered questions—i.e., 1 through 19—while the second set included an additional "four" numbered questions—20 through 23. *See* Dkt. 88-5; Dkt. 92-1. The EEOC's numbering is faulty, however. An examination of the EEOC's first and second interrogatory requests reveals that the EEOC has attempted to skirt the numerical limitation in Rule 33(a)(1) by ignoring the "discrete subparts" of its questions. Indeed, conservatively adding all of the multiple subparts of each of the EEOC's interrogatories demonstrates that the EEOC has actually propounded *at least* fifty-seven interrogatory requests, which is more than double the Rule 33(a)(1) limit.

For example, Interrogatory Number 2 constitutes at least eleven different interrogatories, as it covers twenty different subject matters regarding "any and all individuals who received conditional offers of employment" from Dollar General during a period of more than a decade. *See* Dkt. 92-1 at 9-14. They are not "simply subparts," as the EEOC has tried to classify them,

*see* Exhibit 1, 35:10-15; but rather, separate *questions* that should be counted for purposes of Rule 33(a)(1). The EEOC has nonetheless propounded numerous other interrogatories that also contain multiple subparts—including, among others, interrogatory numbers 3 (three separate subparts), 6 (two subparts), 7 (two subparts), 8 (two subparts), 9 (two subparts), 10 (two subparts), 15 (four subparts), 16 (two subparts), 21 (two subparts), 22 (two subparts), and 23 (twenty-six subparts)—to which Dollar General objected. *See* Dkt. 88-5; 92-1.

As Dollar General highlighted and explained in its answers and objections, and again at the April 1, 2015 hearing, all of those subparts count as additional interrogatories under Rule 33(a)(1) and further put the EEOC well above the limit. *See, e.g.*, *Walech v. Target Corp.*, 2012 U.S. Dist. LEXIS 44119, at *12 (W.D. Wash. Mar. 28, 2012) ("[T]hese are two separate inquiries: (1) state the relevant facts for a particular contention, and (2) identify the evidence (either documents or witnesses) that support the facts stated."); *Imbody v. C & R. Plating Corp.*, 2010 U.S. Dist. LEXIS 12682, at *11 (N.D. Ind. Feb. 12, 2010) ("This interrogatory propounds two separate interrogatories—[one] inquiring about the physical requirements of the job, and the remaining subpart requesting the names of co-workers."); *Bourdganis v. N. Trust Bank*, 2008 U.S. Dist. LEXIS 82089, at *6 n.2 (E.D. Mich. Oct. 16, 2008) (holding that an interrogatory asking for the factual basis for the denial of each request for admission "which is not admitted in full" counts as twelve discrete subparts because the responding party denied twelve requests); *Mitchell Co. v. Campus*, 2008 U.S. Dist. LEXIS 47505, at *55-56 (S.D. Ala. June 16, 2008) (same); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 2002 U.S. Dist. LEXIS 6199, at *8 (W.D. Va. Mar. 18, 2002) (same); *see also Superior Communs. v. Earhugger, Inc.*, 257 F.R.D. 215, 218 (C.D. Cal. 2009) ("Interrogatory no. 1 still has at least three distinct subparts: facts; persons; and documents."); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,

235 F.R.D. 521, 527 (D.D.C. 2006) (explaining that an interrogatory (1) requesting "all facts supporting [the party's] contention"; (2) asking the party to "identify each person who knew, and to explain how they knew, of the [statutory] violations'"; and (3) requesting the party to "identify all documents that support the contention," was "more accurately counted as three separate interrogatories"). The EEOC has never responded to Dollar General's assertion or provided an explanation of how its own count undermines Dollar General's count of the subparts. By failing to do so, the EEOC has essentially conceded that it has exceeded the limit in Rule 33(a)(1).

### B. The EEOC Has Not Demonstrated a Particularized Need For Additional Interrogatories.

Because the EEOC has exceeded the twenty-five interrogatory limit and in turn violated Rule 33(a)(1), the magistrate judge should have required the EEOC to demonstrate *a particularized need* for additional interrogatories. "Courts require a party seeking to serve more than 25 interrogatories to make a 'particularized showing' of necessity." *Med. Assur. Co. v. Weinberger*, 2011 U.S. Dist. LEXIS 62580, at *31-32 (N.D. Ill. May 26, 2011) (quoting *Duncan v. Paragon Publishing, Inc.*, 204 F.R.D. 127, 128 (S.D. Ind. 2001)). The EEOC also should have demonstrated why an interrogatory is the proper tool for obtaining the particular information it seeks, but it did not. The EEOC has made never made a particularized showing of necessity—not in its correspondence with Defense counsel; not in its motion to compel; and not at the April 1, 2015 status hearing. It has never even said just how many interrogatories it needs. That alone is fatal to the EEOC's contention that it needs additional interrogatories. The only basis for the EEOC's request for additional interrogatories is "the scope of the case," Dkt. 88 at 5; a "case of this size," Exhibit 1, 36:1-2; and "written discovery is the least expensive and least burdensome discovery [it] can do," *id.*, 35:22-23. But those generalized statements hardly constitute "a

particularized showing of necessity." Simply saying that "good cause exists" does not mean that it does.

The EEOC's failure to explain why it needs additional interrogatories is highlighted by the fact that discovery is still in its early stages and the EEOC has numerous other discovery tools at its disposal. Tellingly, the EEOC has never explained how or why it is unable to obtain the information it seeks within the limit set forth in Rule 33(a)(1) or through other discovery tools. At the very least, the EEOC must demonstrate how it has exhausted all other avenues of discovery before this Court (or the magistrate judge) should even consider the EEOC's request for additional interrogatories. That includes the EEOC's use of depositions, requests for production, and requests for admission. *See Duncan*, 204 F.R.D. at 128 ("Federal Rules require party to make a specific showing of necessity, and to first exhaust available discovery before seeking leave of Court for supplemental discovery." (citing *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 586 (D. Minn. 1999))). Yet, the EEOC has failed to explain, even in a conclusory fashion, why it cannot gather the information it seeks without resorting to requests for supplemental discovery.

Moreover, as explained, the EEOC's interrogatories are neither simple nor straightforward. Even the magistrate judge stated that some questions were not a good use of an interrogatory and others were more like document requests, which further exemplifies the EEOC's misguided attempt at gathering unnecessary information. *See* Exhibit 1, 34:15-17; 39:4-12; *see also Life Music v. Broadcast Music, Inc.*, 41 F.R.D. 16, 26 (S.D.N.Y. 1966) ("The point of interrogatories is to obtain a party's admissions and contentions under oath and to narrow the issues."). The resources required to respond to the excessive interrogatories will be high, and given the EEOC's failure to explain its need, the value of the information obtained will be low.

Dollar General should not be saddled with the additional burden and expense of having to respond to the additional interrogatories without the EEOC providing a valid and legitimate explanation of their necessity. *See Duncan*, 204 F.R.D. at 120.

In short, the EEOC has never explained *why* it needs additional interrogatories, the number of interrogatories it needs, or why it cannot gather the information it seeks from other available discovery tools. Accordingly, the magistrate judge clearly erred by rejecting Dollar General's objection to the interrogatories and by failing to make a specific finding that good cause exists for the EEOC to propound additional interrogatories. This Court should reverse the magistrate judge's ruling and conclude that Dollar General need not answer Interrogatory Numbers 21, 22, and 23 because the EEOC has exceeded the twenty-five interrogatory limit in Rule 33(a) and good cause does not exist to propound more.

## CONCLUSION

For the foregoing reasons, Dollar General respectfully requests the Court to reverse the magistrate judge's rulings on the EEOC's motion to compel, Dkt. 104, with respect to (1) requiring Dollar General to produce the most recent version of its DBA, the DBA's scoring method, and any documents demonstrating whether Dollar General has performed any studies testing, or analysis of whether the DBA has resulting in reductions in employee theft and shrinkage since 2004; (2) requiring Dollar General to produce its drug testing policy; (3) requiring Dollar General to produce information related to its other pre- and post-offer employment screens, including its credit and reference check policies; and (4) the magistrate judge's rejection of Dollar General's objections to the number of interrogatories that the EEOC has propounded on the ground that the EEOC exceeded the limit in Federal Rule of Civil Procedure 33(a)(1) without good cause.

Dated:  May 4, 2015                                      Respectfully submitted,

                                                    */s/  James P. Looby*
                                                      Joel S. Allen
Ronald E. Manthey
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, Texas 75201
Telephone:  214.466.4000
Facsimile:  214.466.4001
joel.allen@morganlewis.com
ron.manthey@morganlewis.com

James P. Looby
**MORGAN, LEWIS & BOCKIUS LLP**
77 West Wacker Drive, 5th Floor
Chicago, Illinois 60601
Telephone:  312.324.1000
Facsimile:  312.324.1001
jlooby@morganlewis.com

Alexandra S. Tuffuor
**MORGAN, LEWIS & BOCKIUS LLP**
225 Franklin Street, 16th Floor
Boston, Massachusetts 02110
Telephone:  617.341.7700
Facsimile:  617.341.7701
atuffuor@morganlewis.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I, James P. Looby, hereby certify that on May 4, 2015, I electronically filed DOLLAR GENERAL'S OBJECTIONS TO MAGISTRATE JUDGE FINNEGAN'S DISCOVERY RULINGS, DKT. 104, REGARDING THE EEOC'S MOTION TO COMPEL by electronic means through the Court's CM/ECF System, which will send notification of such filing to all counsel of record.

*/s/ James P. Looby*
James P. Looby