IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 13-cv-04307 |
| v. | ) ) | Judge Andrea R. Wood |
| DOLGENCORP, LLC d/b/a DOLLAR GENERAL, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") has challenged Defendant Dolgencorp LLC's ("Dollar General") use of criminal background checks in considering potential employees. According to the EEOC, this practice has a disparate impact on African-American job applicants and thus violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. As part of the extensive and contentious discovery process in this case, the Court resolved cross-motions to compel in a Memorandum Opinion and Order dated May 5, 2015 ("May 5 Order"). (Dkt. No. 111.) Dollar General now challenges several aspects of the May 5 Order in its Motion for Reconsideration of the Court's Ruling on the Parties' Cross-Motions to Compel ("Motion to Reconsider"). (Dkt. No. 126.) Dollar General has also simultaneously filed a Motion to Stay Enforcement of the Court's Ruling Requiring Dollar General to Produce the Personal Identifying Information of its Conditional Hires ("Motion to Stay"). (Dkt. No. 128.) The Motion to Stay asks the Court to stay implementation of the May 5 Order to the extent it requires Dollar General to produce electronic information relating to its

conditional hires until the Court resolves the Motion to Reconsider. For the reasons set forth below, the Court grants the Motion to Stay but denies the Motion to Reconsider.

## BACKGROUND

Dollar General's Motion to Reconsider asks the Court to revisit three aspects of the May 5 Order. First, Dollar General seeks reconsideration of the May 5 Order to the extent it requires Dollar General to produce electronically-stored information ("ESI") containing personal identifying information ("PII") of Dollar General's conditional hires, such as their names, social security numbers, addresses, and telephone numbers. Second, Dollar General asks the Court to reconsider the portion of the ruling in which it declined to require the EEOC to produce information relating to the agency's own use of background checks and criminal history records when making employment decisions. Finally, Dollar General seeks reconsideration of the denial of Dollar General's motion to compel the EEOC to produce information and documents regarding other employers whose criminal background checks and policies have previously been found to be reasonable.

## DISCUSSION

Motions to reconsider serve a limited function: "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). Put another way, "[a] district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling

precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation omitted).

## I. Production of PII of Conditional Hires

In ordering the production of the PII, the Court considered the EEOC's arguments that it required that information (1) to link separate databases maintained by Dollar General and two of its vendors, and (2) to analyze whether any statistical effect observed is due to race as opposed to other demographic factors. In the Motion to Reconsider, Dollar General argues that the Court erred in "going outside the evidence" by purportedly rejecting the sworn affidavit of Douglas Owens, an economist and consultant, in which he claims that the relevant databases could be "easily" linked without the PII. (Mot. to Recons. at 3-4, Dkt. No. 126.) Specifically, in his affidavit, Owens states that linking the relevant databases could be accomplished using "the last four digits of candidates' Social Security Numbers, the city and state of candidates' residence, the month and day of candidates' birth, and a unique identification number for each candidate." (Ex. A to Resp. to Mot. to Compel ¶ 5, Dkt. No. 67-1.) Dollar General misreads the May 5 Order, however. Although the Court acknowledged in a footnote that it had "concerns regarding whether the linking process can be performed in a verifiably accurate manner" (Memo. Op. and Order at 3 n. 1, Dkt. No. 111), this concern was secondary to the Court's belief that, as discussed below, the additional information comprised by the PII was itself relevant.[1] (*Id.* at 3.)

---

[1] Furthermore, although Dollar General characterizes the Court's concerns over Owens's proffered methodology as "whether the linking process could be done accurately," in fact the Court plainly expressed that its concern was whether this linking could be done in a ***verifiably*** accurate manner. Dollar General's proposed approach would involve Dollar General unilaterally (1) withholding identifying information from its production, and (2) assigning purportedly random identification numbers to each job candidate. The Court remains concerns that allowing Dollar General to use this technique would needlessly "engender additional discovery disputes and frustrate resolution of this case." (May 5 Order at 3 n. 1, Dkt. No. 111.)

3

Dollar General next argues that the EEOC is not entitled to undertake an analysis of non-racial demographic factors and thus the Court's reliance on the EEOC's need to do so was a manifest error that requires reversal. On this point, Dollar General first argues that the EEOC did not exhaust its administrative remedies with respect to non-racial demographic factors. This argument was not raised in Dollar General's initial briefing and therefore is not properly raised on a motion to reconsider. *CBI Indus., Inc.*, 90 F.3d at 1270 (it is inappropriate to raise new legal theories in a motion to reconsider when they could have been heard during the pendency of the previous motion).

Furthermore, Dollar General once again misreads the May 5 Order: when the Court noted that the full PII would allow the EEOC to determine "whether non-racial demographic factors may have caused a statistical impact" (May 5 Order at 3, Dkt. No. 111), the Court was not giving the EEOC leave to make new or different discrimination claims. Rather, the Court was simply indicating that the additional PII data fields could be used as controls in conducting an analysis of the disparate impact on African Americans of Dollar General's criminal background check policy. Dollar General's unsupported assertion that "neither a name, a complete social security number, an address, nor a phone number can have a possible effect on the statistical analysis the EEOC is required to perform" (Mot. to Recons. at 6, Dkt. No. 126) was previously raised, considered, and rejected by the Court, and Dollar General fails to cite any controlling law that would dictate to the contrary. Thus, Dollar General fails to establish that the Court's conclusion regarding the relevance of the PII was "manifest error." *CBI Indus., Inc.*, 90 F.3d at 1270 ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments.").

Dollar General also contends that the Court "misunderstood" its argument that producing the PII would infringe upon the privacy of the conditional hires. Again, Dollar General engages

4

in a selective reading of the May 5 Order by focusing only upon the Court's statement that "there is a confidentiality order in place in this case that expressly prohibits the use or disclosure of personal information except as necessary for purposes of this litigation." (May 5 Order at 3, Dkt. No. 111.) It ignores the fact that the Court also considered the argument that Dollar General has a privacy interest even in producing the personal information of its employees to the EEOC. (*Id.*) In the May 5 Order, the Court noted that the case law identified by Dollar General acknowledges that this privacy interest may be overridden when the information at issue is sufficiently relevant to the litigation. (*Id.*) The only additional case law cited by Dollar General in its Motion to Reconsider acknowledges this very same principle. *See Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 517 (D. Minn. 1997) (discovery of personnel information in an employment discrimination case is allowed where value of the information sought would outweigh the privacy interests). The Court did not misunderstand Dollar General's arguments; rather, it found that the relevancy of the PII was sufficient to overcome the applicable privacy interest.

Accordingly, the Motion to Reconsider is denied to the extent it asks the Court to revisit its decision requiring Dollar General to produce the requested PII.

## II.     The EEOC's Use of Background Checks and Criminal History Records

Dollar General also seeks reconsideration of the May 5 Order to the extent it held that the EEOC need not produce information regarding its own use of background checks and criminal history records when making employment decisions. According to Dollar General, this conclusion was a manifest error of law.

As an initial matter, Dollar General mischaracterizes the Court's decision as analyzing the admissibility, rather than the relevance, of the EEOC's use of background checks. (*See* Reply in Supp. of Mot. to Recons. at 9, Dkt. No. 137). The May 5 Order did not turn on the

5

admissibility of the EEOC's hiring practices; rather, it explicitly addressed the relevance (or lack thereof) of this information. Furthermore, Dollar General fails to establish that the Court's assessment of the relevance of the EEOC's hiring practice was a manifest error of law. The Court found that because the business necessity defense applies only where "the challenged practice is job related for the position in question," any practices utilized by the EEOC are irrelevant to Dollar General's business necessity defense. (May 5 Order at 9, Dkt. No. 111 (citing 42 U.S.C. § 2000e-2(k)(1)(A)(i))). In its Motion to Reconsider, Dollar General argues that the EEOC has employees in similar positions with similar responsibilities as it does, and that it was a manifest error of law for the Court to conclude that there was no overlap between the EEOC's and Dollar General's "position[s] in question." The Court considered and rejected this argument, and the only support Dollar General offers for its assertion that the Court's ruling was manifestly erroneous is non-controlling case law that was rejected as unpersuasive in the May 5 Order.

Dollar General also argues that the Court misconstrued *Johnson v. Mayor & City Council of Baltimore*, 472 U.S. 353 (1985). First, although Dollar General refers to the Court's interpretation of *Johnson* as "flawed" and claims that the Court "violates the spirit" of *Johnson*, Dollar General stops short of arguing that the Court made a manifest error of law in its interpretation of the case that would justify reconsideration of the May 5 Order. And although Dollar General is correct that the Supreme Court's opinion in *Johnson* considered an appeal from a summary judgment ruling (rather than a discovery matter), the case can be read more broadly to indicate that federal courts need not give weight to federal employment requirements in addressing employment discrimination cases. *See EEOC v. Illinois*, No. 86 C 7214, 1991 WL 259027, at *4 (N.D. Ill. Nov. 29, 1991) ("[I]n determining whether an employer's employment

6

policy is [a bona fide occupational qualification], federal provisions regarding employment requirements are not persuasive.").

Accordingly, the Court declines to reconsider its ruling denying Dollar General's request to compel production of information relating to the EEOC's own employment practices.

## III. Other Employers' Use of Background Checks and Criminal History Records

Dollar General also asks the Court to reconsider its conclusion that the EEOC need not produce information related to other employers in specific cases because that information is irrelevant and, to the extent such information relates to non-public investigations, the EEOC is prohibited from disclosing it by law. As with its contention that the Court erred in denying its motion to compel the production of the EEOC's hiring information, Dollar General again argues that other employers' practices are relevant to its own business necessity defense. According to Dollar General, "[t]here may be overlap in positions covered, and the same reasons and rationale supporting why those policies are procedures were found to be justified and consistent with business necessity may be applicable here." (Mot. to Recons. at 14, Dkt. No. 137.) Again, the Court already considered and rejected this argument, and Dollar General cites no controlling authority that contradicts the Court's conclusion. Thus, it was not manifest error for the Court to have rejected this argument. *Oto*, 224 F.3d at 606. Accordingly, the Court declines to reconsider the May 5 Order to the extent it denied Dollar General's motion compel the EEOC to produce information relating to other employers' employment practices.[2]

## CONCLUSION

For the foregoing reasons, the Court denies Dollar General's Motion to Reconsider. (Dkt. No. 126.) Dollar General's Motion to Stay (Dkt. No. 128) is granted. Dollar General shall

---

[2] Dollar General also asks the Court to compel the EEOC to collect and produce publicly-available information in the EEOC's possession that relates to other employers' hiring practices. Because the Court finds that this information is not relevant to the instant case, this request is denied.

produce the requested personal data regarding its conditional hires within 21 days of the entry of this Order.

ENTERED:

Dated: June 19, 2015

_____
Andrea R. Wood
United States District Judge